IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES REILLY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   23 C 2411 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| WILL COUNTY SHERIFF MICHAEL KELLEY, | ) | |
| in his official and individual capacities, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff James Reilly alleges that defendant Will County Sheriff Michael Kelley violated his First Amendment Rights by failing to promote him to sergeant in retaliation for his having run against defendant in the 2018 election for Will County Sheriff.   His Amended Complaint (the operative one here) asserts a single count for First Amendment Retaliation under 42 U.S.C. § 1983 against defendant, both in his official and individual capacities.   Defendant has moved for a judgment on the pleadings under Fed. R. Civ. P. 12(c).   For the reasons below, the court denies defendant's motion.

## <u>BACKGROUND</u>

A full recitation of this case's factual and procedural background can be found in <u>Reilly v. Will Cnty. Sheriff's Off.</u>, No. 23 C 2411, 2023 WL 5289434, at *1 (N.D. Ill. Aug. 17, 2023), and in <u>Reilly v. Will Cnty. Sheriff's Off.</u>, 142 F.4th 924, 926 (7th Cir. 2025).   Briefly, plaintiff filed a complaint in April 2023, alleging that defendant and the Will County Sheriff's Office were liable for First Amendment Retaliation under § 1983.   Defendant and the Will County Sheriff's Office responded by moving to dismiss the complaint as time barred.   The court

granted the motion, and dismissed the case. Reilly, 2023 WL 5289434, at *1.[1] But the Seventh

Circuit vacated the dismissal, and remanded to allow plaintiff to file a proposed amended

complaint. According to the Seventh Circuit, plaintiff had provided a proposed amended

complaint that added enough allegations related to the plaintiff's lack of knowledge of the

constitutional injury to avoid "dismissal on statute of limitations grounds." Reilly, 142 F.4th at

932.

After remand, plaintiff filed his amended complaint against defendant (in his official and

individual capacities), which defendant answered, and which is largely the same as the original

complaint—but with a few added allegations that the Seventh Circuit found would avoid statute

of limitations issues. Relevant here, the amended complaint alleges the following allegations,

which are taken as true for purposes of defendant's Rule 12(c) motion. See Clark v. Blue

Diamond Growers, No. 22 C 1591, 2024 WL 730379, at *1 n.1 (N.D. Ill. Feb. 22, 2024).

Plaintiff "is currently a Deputy with the [Will County] Sheriff's Office." He joined that

office in 2013. By 2016, he had "met or exceeded all performance standards and was named

Deputy of the Year." In 2017, plaintiff announced that he was running for Will County Sheriff

against the "incumbent Sheriff," who "was and is" defendant. Plaintiff "performed all of his

campaign activities on his personal time, outside of his scope of duties as a Will County deputy."

"In the course of the campaign, [plaintiff] made remarks critical of [defendant] during

interviews with local newspapers, in public fora." But "[a]t no point close in time to his

---

[1] In doing so, the court noted that because Sheriff Kelley had been named in both his individual and official capacity, plaintiff agreed that naming the Will County Sherriff's Office as a defendant was duplicative and unnecessary. Id. at *1 n.1.

campaign statements was [plaintiff] punished in any way": he "was not fired, demoted, reprimanded or given poor assignments for his comments critical of [defendant]."

Defendant ultimately "defeated [plaintiff] and retained his position." By then, plaintiff and "several other Will County deputies [had become] eligible for the sergeant promotional exam," and, if they did well enough, sergeant promotion. Plaintiff "finished top of his class and was placed first on the Sergeant Promotional List." But instead of promoting plaintiff, defendant "promoted five different candidates to sergeant."

A few years later during a political debate between defendant and plaintiff, defendant "admitted that his [no-promotion] decision was not based on merit but [on] campaign statements" that plaintiff had made, "which had allegedly placed [defendant] in an unfavorable light." Indeed, defendant stated: "Why would I promote him? Who would do that?" In other words, defendant's "admission made clear that his decision to bypass [plaintiff] was solely in retaliation for [plaintiff] exercising his constitutional rights by running against him for Will County Sheriff and making protected political statements in the course of a campaign."

## <u>DISCUSSION</u>

Defendant has moved for judgment on the pleadings under Rule 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." <u>Federated Mutual Ins. Co. v. Coyle Mech. Supply Inc.</u>, 983 F.3d 307, 313 (7th Cir. 2020). "To survive a motion for judgment on the pleadings, 'a complaint must state a claim to relief that is plausible on its face.'" <u>Bishop v. Air Line Pilots Assoc., Int'l</u>, 900 F.3d 388, 397

3

(7th Cir. 2018) (citation omitted). That means that, "under Rule 12(c), as under Rule 12(b)(6), the factual allegations in the complaint, accepted as true, must 'raise a right to relief above the speculative level' for the suit to proceed any further." Wolf v. Riverport Ins. Co., 132 F.4th 515, 519 (7th Cir. 2025) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In determining if a complaint states a plausible claim for relief, courts draw all facts and reasonable inferences in favor of the non-moving party. ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc., 877 F.3d 742, 746 (7th Cir. 2017). "A defendant filing a motion under Rule 12(b)(6) or 12(c) can base its motion on only the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." Kuebler v. Vectren Corp., 13 F.4th 631, 636 (7th Cir. 2021) (cleaned up).

Defendant argues here that he is entitled to judgment on the pleadings because plaintiff's sole claim—for First Amendment Retaliation under § 1983—falls within "the *Elrod-Branti* exception to the prohibition against politically motivated employment decisions." This exception, he asserts, sinks both the official and individual capacity claims against him. And even if it did not, he contends, it would at least entitle him to qualified immunity on the personal capacity claim. That is because, he argues, the inapplicability of the exception was not so clear that defendant could be said to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known."

In response, plaintiff asserts that defendant's argument for the exception "cannot be made under Rule 12, where no facts in [his] complaint establish that defense as a matter of law." And, he further contends, the exception does not apply here, anyway, because defendant's decision to

4

deny him a promotion was illegitimate harassment at odds with the purpose behind the exception. Thus, he concludes, his claim against defendant—in both defendant's official and individual capacities—survives dismissal.

### The Elrod-Branti Exception and the Policymaker Corollary to Pickering

"There was a time when by virtue of accepting public employment an individual surrendered his right of free speech." Wilbur v. Mahan, 3 F.3d 214, 216 (7th Cir. 1993). But those days are long gone. It is now well-recognized that "[e]mployees do not give up all First Amendment rights when they accept government employment," and that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen about matters of public concern." Hagan v. Quinn, 867 F.3d 816, 822 (7th Cir. 2017) (cleaned up). To that end, a public employee can seek to hold liable superiors who have retaliated against them based on their having engaged in protected speech in violation of the First Amendment.

To establish a First Amendment retaliation claim, a public employee must show that: (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation because of his employer's action; and (3) his protected speech was a but-for cause of the employer's action. Id. As for the first element, the Seventh Circuit applies the "Connick-Pickering" balancing test that was first announced by the Supreme Court in Pickering v. Board of Education, 391 U.S. 563 (1968), and clarified in Connick v. Myers, 461 U.S. 138 (1983). Under it, a public employee's speech is constitutionally protected if: "(1) he made the speech as a private citizen; (2) the speech addressed a matter of public concern; and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." Swetlik v. Crawford, 738 F.3d 818, 825 (7th Cir. 2013) (cleaned up). The

5

government bears the burden of justifying the adverse employment action. See Kiddy-Brown v. Blagojevich, 408 F.3d 346, 357 (7th Cir. 2005).

Defendant argues here that the allegedly adverse employment action was justified under the "Elrod-Branti exception." In Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980), "the Supreme Court prohibited government employers from dismissing most public employees on the basis of partisan affiliation, holding that the age-old practice of patronage firings violated the First Amendment." Hagan, 867 F.3d at 824. "At the same time, the Court recognized an exception for employees who occupy policymaking or confidential positions." Id. This exception has come to be known as the "Elrod-Branti" or "policymaking" exception. Hanson v. LeVan, 967 F.3d 584, 592 (7th Cir. 2020). It is "derive[d] from the principles of representative government: without political alignment in certain positions, employees occupying those positions could obstruct the implementation of policies presumably sanctioned by the electorate, who placed the current administration in power." Id. And it has been extended to cover not just dismissals but other adverse employment actions, like withheld promotions. Cf. Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 (1990) (extending Elrod and Branti to hold that "promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees").

Plaintiff does not allege here that he was denied the promotion to sergeant because of his partisan affiliation. He instead alleges that he was retaliated against "solely" for "exercising his constitutional rights by running against [defendant] for Will County Sheriff and making

6

protected political statements in the course of a campaign." So his allegations align more closely with the Connick-Pickering line of cases than the Elrod-Branti line.

In Wilbur, the Seventh Circuit "considered the 'intersection' between the *Connick–Pickering* cases," on the one hand, which "concern the rights of public officials to 'discipline an employee who speaks out on a matter of public significance in a way displeasing to them,'" and "the *Elrod–Branti* cases," on the other, which "concern the rights of such officials to 'hire or fire an employee on the basis of his affiliation with a political party or faction.'" Hagan, 867 F.3d at 825 (quoting Wilbur, 3 F.3d at 215). As is clear from the Hagan court's detailed analysis of the case, Wilbur involved facts that bear notable similarities to those alleged here:

> Wilbur was a deputy sheriff, which is deemed a policymaking position in Illinois. He suffered an adverse employment action not because of his political affiliation (he and the sheriff were both Democrats) but because of his political speech and activity. . . . After the sheriff decided to run for re-election, Wilbur announced his own candidacy. The sheriff then amended office regulations to provide that any employee who ran for sheriff could be placed on unpaid leave. . . .
>
> We recognized that, at "first blush the facts ... present[ed] a blatant case of retaliation for the exercise of the right of free speech," . . . but we concluded that the district court rightly dismissed Wilbur's First Amendment claim. . . . Wilbur's expressive conduct (campaigning against his boss) brought him within the "scope of the concern that gave rise to the exceptions in the patronage cases." . . . The concern "is with the effects on the operations of government of forcing a public official to hire, or retain, in a confidential or policymaking job, persons who are not his political friends." . . . It would be a strange rule, we reasoned, that "gave more job protection to policymaking employees who vociferously attack their superiors than to policymaking employees who do their best to serve … but have the misfortune to belong to the wrong party." . . . In effect, the policymaker exception to the *Elrod–Branti* line of cases protects elected officials from the risk that employees politically opposed to them might undermine their policies. The policymaker corollary to the *Connick–Pickering* line of cases allows those elected officials to respond to actual political attacks from those employees, at least as a matter of First Amendment law.

Id. at 826 (quoting Wilbur, 3 F.3d at 215-19).

In short, a "logical outgrowth of the *Elrod-Branti* line of cases" (id. at 819) is the "policy-maker corollary to the *Pickering* analysis," under which "the First Amendment does not prohibit the discharge of a policy-making employee when that individual has engaged in speech on a matter of public concern in a manner that is critical of superiors or their stated policies," id. at 826 (cleaned up). To determine whether the policymaking corollary applies, courts "consider two criteria: First, the employee must have occupied a policy-making position"; and second, "if so, his speech must have been of the kind that falls within the scope of the corollary." Id. (cleaned up).

Whether Plaintiff was in a Policymaking Position

Turning to the first factor, defendant argues that plaintiff's role as a deputy sheriff made him a policymaker as a matter of law. "No clear line can be drawn between policymaking and nonpolicymaking positions." Hagan, 867 F.3d at 824 (cleaned up). The "ultimate inquiry" is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id. (cleaned up). The Seventh Circuit has "held that political affiliation is an appropriate requirement when the employee's position authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." Hanson, 967 F.3d at 593. In considering whether an employee's position authorizes such input, the court's "focus" should be "on the powers inherent in a given office"—not "the functions performed by a particular occupant of that office." Id.

That "is why statutes, ordinances, regulations, and reliable job descriptions are the go-to sources for determining what the position entails." Id. And it is also why the policymaker

8

position inquiry may "in some cases . . . be resolved as a matter of law—depending on how clearly" those sources "establish the position responsibilities"—even though the Seventh Circuit has "generally classified [the policymaker inquiry] as a matter of fact." Id. at 590-91. This is especially so when a statute is the source. See id. at 593 (stating that "a statute or ordinance trumps a job description whenever they conflict"); Hagan, 867 F.3d at 827 (stating that "where a statute establishes a position, the statute is likely to provide the best foundation for classifying it for these First Amendment purposes"); Vargas-Harrison v. Racine Unified Sch. Dist., 272 F.3d 964, 972 (7th Cir. 2001) (observing that "an individual's status as a policy-making employee frequently poses a fact question" but that "a court may resolve this issue without the aid of a finder of fact" when "the duties and responsibilities of a particular position are clearly defined by law and regulations"); Pleva v. Norquist, 195 F.3d 905, 912 (7th Cir. 1999) (stating that the policymaking issue "should ordinarily be left for a jury to determine" but may be resolved as a matter of law when the position responsibilities are "clearly outlined by law").

Defendant contends here that "the allegations show that [plaintiff] was a deputy sheriff when he was passed over for promotion to the rank of sergeant," and that "[i]n Illinois, the powers of a deputy sheriff are set forth by [a] statute in the Counties Code" that "expressly confirms that the deputy sheriff position possesses all the same powers as the elected sheriff." (Citing 55 ILCS 5/3-6015). As a result, defendant concludes, plaintiff is a policymaker as a matter of law.

In so arguing, defendant seems to assume that "deputy sheriff" is the relevant position. But this case involves a withheld promotion—not a dismissal. And the Seventh Circuit has suggested that the relevant position when a withheld promotion is at issue is the job for which

9

the plaintiff was passed over.   In <u>Fuerst v. Clarke</u>, for example, the court analyzed whether the Milwaukee County sheriff violated a deputy sheriff's First Amendment rights by failing to promote him to sergeant over his having publicly criticized the sheriff.   454 F.3d 770, 771-72 (7th Cir. 2006).   In doing so, the court explained that "[p]ublic officials do not violate the First Amendment when they deny for political reasons appointments or promotions to jobs that involve the making of policy or the giving of confidential policy-related advice to a policymaker."   <u>Id.</u> at 772.   So, the court concluded, "the first question [wa]s whether the job of <u>sergeant</u> in the Milwaukee County Sheriff's Department is such a job."   <u>Id.</u> (emphasis added).

Here, then, the question is whether the job of sergeant in the Will County Sheriff's office is a policymaking position—not, as defendant contends, whether a deputy sheriff is.   Of course, because the complaint pleads that a sergeant is a promotional step above deputy in the Will County Sheriff's office, it is certainly reasonable to conclude that if a deputy sheriff is a policymaker, so too is a sergeant.   <u>Cf. Mitchell v. Thompson</u>, 18 F.3d 425, 427 (7th Cir. 1994) ("Thompson could reasonably have believed that the position of trust and authority occupied by Plaintiff, as the chief deputy [sheriff], actually made Plaintiff more susceptible than a regular deputy [sheriff] to the demands of political patronage."); <u>see also Matrisciano v. Randle</u>, 569 F.3d 723, 731-32 (7th Cir. 2009) ("Matrisciano held the position of Assistant Deputy Director in the Illinois Department of Corrections," wherein he "supervised wardens and assistant wardens," "both positions [of which] constitute policy-making positions . . ., and it would seem odd for a policy-maker's supervisor not to qualify as a policy-maker himself"), abrogated in part on other grounds by <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167 (2009).   The court will therefore at least consider defendant's argument that "deputy sheriff" is a policymaking position.

10

At this pleading stage, the court does not have "materials such as an employment manual or a detailed job description listing the tasks" that deputies perform. Hagan, 867 F.3d at 827; see also Hanson, 967 F.3d at 593 ("at this 12(b)(6) stage, we don't have an official description of the Deputy Assessor position"). Nor has plaintiff alleged in the complaint what duties a deputy has in the Will County Sheriff's Office. See Hanson, 967 F.3d at 593 (a plaintiff's "allegations about the nature of the position may be relevant"). But because Illinois "statutes expressly confirm[ ] that the Deputy [Sheriff] position ha[s] all the same powers as the [Sheriff]"—and there is no dispute that the Sheriff himself is a policymaker[2]—the court can conclude as a matter of law that "deputy sheriffs" (if, as explained below, that is what plaintiff's official position is) are policymakers. Id. at 595. Indeed, "[t]hat was the case with the Indiana deputy county auditor position in Kline v. Hughes, 131 F.3d 708, 710 (7th Cir. 1997) (deputy who was vested with the power by express statute to perform all duties of the auditor fell within the Elrod-Branti exception)." Id.

Kline is instructive here. There, after "officially assum[ing] the office of Auditor of Spencer County, Indiana ('county auditor')," the defendant Hughes, a Republican, replaced the plaintiff Kline with another person in the role of "deputy auditor." Kline, 131 F.3d at 708-09. So Kline sued Hughes, "in her individual and official capacities, for violating [Kline]'s First Amendment right to freedom of political association." Id. at 709. The district court thereafter

---

[2] Plaintiff pleads that defendant "has final policy-making authority," and defendant admits this allegation in his answer to the amended complaint. That is not surprising: "the Sheriff is elected by the voters in a county to serve the public at large," "his selection is based significantly on the popular approval of his expressed political agenda," and he "has broad discretion to set whatever policies he . . . believes necessary to protect the interest of that society." Upton v. Thompson, 930 F.2d 1209, 1215 (7th Cir. 1991) (cleaned up).

11

granted summary judgment in favor of Hughes based on the Elrod-Branti exception. Id. The Seventh Circuit affirmed. Id. at 710.

In doing so, the court relied on Indiana statutory law. "Under Indiana law," the court explained, "a deputy county auditor may perform all the official duties of the county auditor; the county auditor is responsible for all the official acts of the deputy." Id. (citing Ind. Code § 36-2-16-3(a) & (b)).[3] "This arrangement," the court continued, "makes clear that the office of deputy auditor plays a vital role in the implementation of the county auditor's policies." Id. It did not matter that the statute "states only that the deputies *may* perform the official duties of an elected official." Id. at 710 n.4 (emphasis in original). That is because, the court explained, while statutory "language . . . gives the elected county auditor the discretion to give responsibilities to her deputies," "the office of deputy auditor has, at all times, the potential to influence matters of policy." Id. The court also noted that Indiana Supreme Court had specifically held "that a deputy county auditor 'is more than a clerk or an employe[e]; he is vested with the power by express statute to perform all duties of the auditor, and public policy requires that this should be so.'" Id. at 710 (quoting Wells v. State ex rel. Peden, 175 Ind. 380 (1911)). The court thus held that Indiana's "statutory scheme places the deputy county auditor in a position that carries with it the inherent ability to have 'meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation.'" Id. (citation omitted).

---

[3] The Indiana statute provides: "(a) A deputy appointed under this chapter may perform all the official duties of the officer who appointed the deputy and is subject to the same regulations and penalties as the officer. (b) The officer appointing the deputy is responsible for all the official acts of the deputy." Ind. Code Ann. § 36-2-16-3.

12

The Illinois statutory scheme here is quite similar to the Indiana scheme in Kline. In Illinois, deputy sheriffs are appointed by the county sheriff (55 ILCS 5/3-6008), the appointments must be in writing (id. § 3-6009), and upon appointment the deputy must take an oath of office (id. § 3-6010).[4] Section 3-6015, moreover, further provides the "[p]owers of deputies":

> Deputy sheriffs, duly appointed and qualified, may perform any and all the duties of the sheriff, in the name of the sheriff, and the acts of such deputies shall be held to be the acts of the sheriff.

And courts have recognized that in Illinois, deputy sheriffs share the same power and perform the same duties as the sheriff. See Scott v. O'Grady, 975 F.2d 366, 370 (7th Cir. 1992) ("Since deputy sheriffs are appointed by the county sheriff, . . . § 3-6008, and 'may perform any and all the duties of the sheriff,' and since the acts of deputies are 'held to be acts of the sheriff,' . . . § 3-6015, they too are county officials under Illinois law."); People v. DeBlieck, 181 Ill. App. 3d 600, 608 (2d Dist. 1989) ("person summoned by a sheriff exercises the same powers as the sheriff"). The Illinois "statutory scheme" thus "places the deputy [sheriff] in a position that carries with it the inherent ability to have 'meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation.'" Kline, 131 F.3d at 710 (citation omitted).

Consequently, because the sheriff is indisputably a policymaker, and because Illinois "statutes expressly confirm[ ] that the Deputy [Sheriff] position ha[s] all the same powers as the

_____

[4] The court takes judicial notice of the Illinois statutes. See Demos v. City of Indianapolis, 302 F.3d 698, 706 (7th Cir. 2002) ("[A] district court can always rely on public statutes.").

13

[Sheriff]," the court has "no trouble concluding that" the position of "deputy sheriff" also fits within the policymaker exception. Hanson, 967 F.3d at 595.

Seventh Circuit precedent further supports this conclusion. See Dimmig v. Wahl, 983 F.2d 86, 87 (7th Cir.1993) ("Illinois sheriffs do not violate the First Amendment by taking political considerations into account when deciding whether to fire a particular deputy sheriff"); Upton, 930 F.2d 1218 (concluding that "deputy sheriffs operate with a sufficient level of autonomy and discretionary authority to justify a sheriff's use of political considerations when determining who will serve as deputies"); Hagan, 867 F.3d at 825 (analyzing Wilbur and explaining that "a deputy sheriff . . . is deemed a policymaking position in Illinois"); Wilbur, 3 F.3d at 217 (explaining that Upton "holds that deputy sheriffs in Illinois are policymakers within the meaning of [Elrod and Branti] because they exercise significant discretion (more than that of an ordinary policeman) in the performance of their duties").

To be sure, cases after Dimmig, Upton, and Wilbur have suggested that deputy sheriffs in Illinois might not be per se policymakers depending on the size of the particular sheriff's office. See Fuerst, 454 F.3d at 773-74 (recognizing that Upton and Dimmig "do treat deputy sheriffs as policymaking officials, but *Upton* notes that particularly in a small department, a Sheriff's core group of advisers will likely include his deputies, . . . while" the Milwaukee's Sheriff's Office was "a large department," and "*Dimmig* does not indicate the nature of the deputy sheriffs' duties, but, like *Upton*, was a case in which the sheriff's department had much less hierarchy than the Milwaukee County Sheriff's Department" (cleaned up)); Ruffino v. Sheahan, 218 F.3d 697, 700 (7th Cir. 2000) (stating that "it would be a remarkable extension of the policymaker line of cases to hold that the hundreds of deputy sheriffs in Cook County are all policymakers, for

14

whom the Sheriff has a legitimate interest in insisting on personal and political loyalty"); Kolman v. Sheahan, 31 F.3d 429, 432-23 (7th Cir. 1994) (noting that "[i]n *Upton* and *Dimmig*, the deputies were obviously close to the sheriff and intricately involved in implementing the law enforcement policies advanced during his election"); Yahnke v. County of Kane, No. 12-5151 2012 WL 6642486, at *3 (N.D. Ill. Dec. 20, 2012) (explaining that the "*Kolman* decision further explained . . . that other cases were not so clear-cut and that *Upton* and *Dimmig* did not create a per se rule," and that "whether deputy sheriffs, especially in large counties, are involved in policy or decision making is usually a question of fact").

But neither these cases nor the ones that have found that deputy sheriffs in Illinois are policymakers cited the Illinois statutory scheme discussed above. The court cannot ignore Seventh Circuit case law that makes clear that statutes that expressly confirm that a deputy position that has all the same powers as a policymaking position are also policymakers. See Hanson, 967 F.3d at 595; Kline, 131 F.3d at 710; see also Fuerst, 454 F.3d at 773 (distinguishing Terry v. Cook, 866 F.2d 373, 377 (11th Cir. 1989), where "the deputy sheriff was the sheriff's 'alter ego'").

At the same time, however, the court also cannot say for certain at this stage that the statute clearly covers plaintiff's position as "deputy"—let alone the "sergeant" position he was denied. Plaintiff argues that judgment on the pleadings is inappropriate because "[d]efendant has done nothing here to establish that the cited statute [55 ILCS 5/3-6015] is a reliable description of [plaintiff]'s position, so the statute cannot control." "Defendant," plaintiff continues, "cannot rely on mere attorney argument that [plaintiff] is a statutory 'deputy sheriff, duly appointed and qualified,' whose position is defined by the cited statute."

15

The court generally agrees. Although defendant correctly points out in reply that the complaint states several times that plaintiff is a "deputy" with the Will County Sheriff's Office, "generalizations based on job title are contrary to the functional approach of *Branti*, which focuses on the duties and responsibilities of a particular office." Flenner v. Sheahan, 107 F.3d 459, 464 (7th Cir. 1997). The limited record here does not confirm that the statute applies to a "deputy" in the Will County Sheriff's Office, and if it does, that plaintiff was "duly appointed and qualified" and took the oath of office under it. And as noted above, moreover, while it would certainly stand to reason that if a deputy sheriff is a policymaker, then a sergeant would be one too, the court cannot definitively conclude that at this stage. At the end of the day, the court cannot "dismiss[ ] based on a probability, when the allegations of the complaint allow for other" plausible job responsibilities. Kolman, 31 F.3d at 433 (reversing dismissal of complaint under Rule 12(b)(6) based on policymaker exception); see also Riley v. Blagojevich, 425 F.3d 357, 361 (7th Cir. 2005) ("the same title can denote quite different levels of responsibility—a deputy sheriff could be a policeman in one sheriff's department and the second in command in another"). Rather, "facts about the plaintiff['s] job[ ]" will have to "be developed." Kolman, 31 F.3d at 433.

Whether Plaintiff's Speech Falls within the Scope of the Policymaker Corollary

Even if the court were inclined to conclude as a matter of law that a sergeant in the Will County Sheriff's Office is a policymaker, there are still issues that prevent judgment on the pleadings. As an initial matter, the expressive conduct at issue here appears to fall within the scope of the policymaker corollary. Indeed, plaintiff alleges: that in "the course of the campaign, [he] made remarks critical of [defendant]"; that defendant later "admitted that his [no-

16

promotion] decision was" based on these "campaign statements," "which had allegedly placed [defendant] in an unfavorable light"; and that defendant's "admission made clear that his decision to bypass [plaintiff] was solely in retaliation for [plaintiff] exercising his constitutional rights by running against him for Will County Sheriff and making protected political statements in the course of a campaign." These allegations, taken as true, show that plaintiff "engaged in speech on a matter of public concern in a manner that is critical of superiors or their stated policies," Hagan, 867 F.3d at 826 (cleaned up), and thus, that plaintiff's speech and First Amendment activity is the kind that "fits comfortably within the scope of the corollary," id. at 828.

Yet lurking within this factor—or at least somewhere within the policymaking corollary framework—are factual issues related to defendant's retaliation. "[T]he dismissal or demotion of a deputy who challenged the sheriff in an election withstands a First Amendment challenge only because [the court] presume[s] that the sheriff's action is directed toward the efficient and effective operation of his public office." Wallace v. Benware, 67 F.3d 655, 662 (7th Cir. 1995). But not all sheriff's actions get the benefit of that presumption. In Wallace, for example, a deputy sheriff in Polk County Wisconsin sued the sheriff for violating his First Amendment rights by retaliatorily harassing him after he announced that he would run against the sheriff in an upcoming election. Id. at 656. In particular, after the deputy unsuccessfully ran in the election, the sheriff retained the deputy but then retaliated against him by subjecting him to a series of harassing incidents designed to chill his First Amendment rights. Id. A jury ultimately sided with the deputy. And the district court thereafter denied the sheriff's post-trial motions, finding that it was not "permissible" under the First Amendment for the sheriff "to

17

retain Wallace as a deputy sheriff with most of his former responsibilities but to retaliate against him through a campaign of petty harassment." Id. at 661.

On appeal, the sheriff argued that he was entitled to judgment as a matter of law based on the policymaker exception. The deputy countered that the policymaker exception did not apply because "the sheriff chose to retain a politically disloyal deputy but to retaliate against him through a campaign of petty harassment." Id. at 660. The Seventh Circuit agreed with the deputy (though it ultimately dismissed based on qualified immunity).

In doing so, the court explained that "[a]lthough [it] presume[s] that a deputy's dismissal is aimed at serving the public interest in efficient and effective government, it would be illogical to apply the same presumption to harassment designed specifically to hinder or to disrupt a deputy in the performance of his duties." Id. at 662. The court then noted that the "evidence at trial established that [the sheriff]'s treatment of [the deputy] did not serve to enhance the efficiency and effectiveness of the Polk County Sheriff's Department." Id. The court further noted that the sheriff "attempted to show [at trial] that his decisions represented the legitimate exercise of his authority as sheriff over departmental and personnel matters, but the jury rejected those explanations and found that [he] had acted primarily to retaliate against [the deputy] for his political campaign." Id.

Here, defendant argues that deputy is a policymaking position. Yet he allowed plaintiff to continue working as a (policymaking) deputy even after he withheld promotion to sergeant. This is not a situation, then, where a government official denies a promotion from a non-policymaking position to a policymaking position. In that situation, the presumption would readily apply. But without more in the record about the differences (or not) between a deputy

18

and a sergeant in the Will County Sheriff's Office, it is unclear whether the policymaking corollary and its presumption—that the sheriff's decision to withhold promotion was "aimed at serving the public interest in efficient and effective government," id.—should apply here. Again, facts about the jobs will need to be developed.

In sum, the court finds that there are factual issues that prevent the court from granting judgment on the pleadings on plaintiff's First Amendment Retaliation claim based on the policymaker corollary.

### Qualified Immunity

Defendant argues that even if the policymaker exception does not apply, he is at least entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kisela v. Hughes, 584 U.S. 100, 104 (2018) (cleaned up). "[R]easonableness is judged against the backdrop of the law at the time of the conduct." Id. (cleaned up). To determine whether qualified immunity "shields" a government official, courts analyze two elements: (1) whether the official 'violated a statutory or constitutional right"; and (2) whether "the right was 'clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). "If either inquiry is answered in the negative, the defendant official is protected by qualified immunity." Koh v. Ustich, 933 F.3d 836, 844 (7th Cir. 2019) (citation omitted) (emphasis in original). And the court "may analyze the 'clearly established' prong without first considering whether the alleged constitutional right was violated." Kemp v. Liebel, 877 F.3d 346, 351 (7th Cir. 2017).

19

At the same time, "qualified immunity is fact-driven, and . . . as a matter of federal pleading rules[,] the plaintiff is not required to set out in his complaint all of the facts that might bear on qualified immunity."  Beathard v. Lyons, 129 F.4th 1027, 1033 (7th Cir. 2025).  Here, "qualified immunity inquiry cannot take place until the facts about" the deputy and sergeant "roles . . . are put on the table."  Kolman, 31 F.3d at 434.  The court thus denies defendant's motion for judgment on the pleadings based on qualified immunity, deferring the question of qualified immunity until it has a more fully developed record.

## CONCLUSION

For the above reasons, the court denies defendant Will County Sheriff Michael Kelley's motion for judgment on the pleadings [46].  The court denies the motion to the extent that defendant argues that plaintiff's "allegations do not amount to a constitutional violation because his position falls within the *Elrod-Branti* exception to the prohibition against politically motivated employment decisions."  The court also denies defendant's motion to the extent that it is based on qualified immunity, deferring the question of qualified immunity until the court has a more fully developed record.  The parties are directed to file a joint status report using this court's form on or before July 21, 2026.

So ordered.

ENTER:

Robert W. Gettleman
**United States District Judge**

DATE:   June 23, 2026

20